# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PHILIP COURTNEY, as husband of GLORIA COURTNEY, ) ) ) | |
| Plaintiff, ) ) | |
| ) | 8:07CV12 |
| vs. ) ) | |
| ) | MEMORANDUM AND |
| ZURICH AMERICAN INSURANCE ) COMPANY, ) ) | ORDER |
| Defendant. ) | |

This matter is before the court by consent of the parties on the defendant's Motion for Summary Judgment. The matter has been fully briefed. For the reasons discussed below, the court finds that the motion should be denied.

## I. JURISDICTION

This action arises under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq*. ("ERISA"). Defendant timely removed the action to federal court pursuant to 28 U.S.C. § 1446(b). This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Venue in this court is proper under 28 U.S.C. § 1391.

## II. FINDINGS OF FACT

The court finds that the following facts are uncontroverted for purposes of this Motion for Summary Judgment and constitute the material facts upon which a resolution of these issues must be premised.

1.  Plaintiff resides in Alliance, Nebraska and is the husband of the deceased, Gloria Courtney.

2.  Defendant ("Zurich") is an insurance company organized under the laws of the State of New York.

3.  Plaintiff is the named beneficiary under a Group Accident Policy, GTU3760715 ("Policy") issued by Zurich. The Policy is an insured plan governed by ERISA.

4.  The insured, Gloria Courtney, died in a motor vehicle collision on February 16, 2004. The death certificate states that the immediate cause of her death was "multiple blunt force injuries."

5.  At the time of the collision, Gloria Courtney was driving a Jeep Grand Cherokee eastbound on West Kansas in the city of Alliance, Nebraska. Her vehicle veered into the westbound lane, struck the left rear corner of a truck, continued east, and collided head-on with a 1999 Peterbuilt Tractor in the westbound lane.

6.  At the time of the collision, Gloria Courtney was significantly intoxicated. Blood tests taken within 24 hours of her death showed that she had a blood alcohol content level of 0.5%.

7.  Police reports in the administrative record reflect plaintiff's statements that his wife did drink a lot and usually consumed about four or five shots of alcohol and a couple of beers every night.

8. Plaintiff made a claim against Zurich for accidental death benefits under the Policy as a result of the death of his wife.

9. The Policy provides as follows:

Loss of Life. If a Covered Person dies as a result of an Injury, We will pay the Principal Sum. The death must occur within 365 days of the Injury.

\*\*\*

Injury means a bodily injury directly caused by accidental means which is independent of all other causes, results from a Hazard, and occurs while the Covered Person is insured under this Policy.

10. The Policy also provides: "A loss shall not be a Covered Loss if it is caused by, contributed to, or resulted from   \* \* \*   Suicide, attempted suicide, or a purposeful self-inflicted wound…"

11. The Policy states:

The Policyholder agrees that the Policy to which this endorsement is attached constitutes the plan and plan document under the Employee Retirement Income Security Act of 1974 as amended (ERISA). The Policyholder designates Us as the claims fiduciary of this plan and gives Us the discretionary authority to determine eligibility for benefits and to construe the terms of the plan. The Policyholder agrees to comply with the disclosure and reporting requirements of ERISA regarding the plan and Our designation and authority as the claims fiduciary.

12. On May 13, 2004 after reviewing and investigating the plaintiff's claim for benefits, Zurich denied the claim and sent a letter to plaintiff stating its reasons for denial, i.e., Gloria Courtney was intoxicated when involved in the motor vehicle accident and, considering her blood alcohol level, the death was not "accidental." Zurich's letter advised,

Under Federal common law, a death is not deemed to be accidental if a reasonable person would believe that "the conduct at issue would result in the

sort of injury that was sustained." *See Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1110 (7th Cir. 1998). Many Federal courts, applying Federal common law, have ruled that the death of the insured is not accidental if it occurred when the insured was driving while intoxicated. *See e.g., Fowler v. Metropolitan Life Ins. Co.*, 938 F. Supp. 476, 480 (W.D. Tenn. 1996); *Nelson v. Sun Life Assurance Co. of Canada*, 962 F. Supp. 1010, 1012 (W.D. Mich. 1997); *Walker v. Metropolitan Life Ins. Co.*, 24 F. Supp. 2d 775, 781 (E.D. Mich. 1997).

Zurich also denied coverage based on the Policy exclusion "for purposefully self-inflicted wound."

13. On July 8, 2004, plaintiff contacted Zurich, asserting that coverage was required pursuant to the panel decision in *King v. Hartford Life & Accident Ins. Co.*, 357 F.3d 840 (8th Cir. 2004) ("*King I*"); however, *King I* had been vacated on April 6, 2004.

14. On August 2, 2004, Zurich again denied plaintiff's claim for benefits. Citing *Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104 (7th Cir. 2004), and *Poeppel v. Hartford Ins. Co.*, 87 Fed. Appx. 885 (4th Cir. 2004), Zurich took the position that a death that occurs as a result of driving while intoxicated, although perhaps unintentional, is not accidental because the result is reasonably foreseeable.

15. By letter dated September 15, 2005, plaintiff renewed his claim for benefits, in light of the Eighth Circuit's final decision *en banc* in *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, filed on July 22, 2005 ("*King II*"). The ERISA Review Committee requested that the Claims Department refer the matter to an independent medical expert to determine the medical consequences of a blood alcohol content of 0.5.

16. The expert report requested by the ERISA Review Committee concluded:

> The blood alcohol level found in this patient is extremely high. Levels over .1% are above the legal limit in most states. A level of .5% in the blood is consistent with significant intoxication. If the level were as low as .4% the patient would likely have been impaired at the time of the accident. This level of alcohol would be extremely dangerous in itself in someone who doesn't drink frequently. However, in someone who drinks regularly as this patient did, she would potentially still be awake and breathing although it is likely she would be intoxicated.
>
> Levels greater than .40% have been associated with death. However it is not possible to say whether this level of alcohol resulted in this patient's death due to the issue of tolerance. Some people are wide awake and acting normally with that level of alcohol while in some this level is enough to cause seizures or death. ("A serum concentration of 450 mg/dl may be fatal in naive patients whereas survival has been reported after a concentration of 1500 mg/dl") The median lethal dose is 5 to 8 grams per kg in casual drinkers and 3 to 6 g/kg in children. This patient was not casual drinker. A level of 0.50% by itself would not likely be lethal in this patient.

17. By letter dated December 21, 2005, Zurich again denied coverage. This time, the denial was based on

- the expert's statement that "Levels greater than .40% have been associated with death. However it is not possible to say whether this level of alcohol resulted in this patient's death due to the issue of tolerance.";

- the decision in *King II*, 414 F.3d 994 (8th Cir. 2005);

- its discretionary authority to determine eligibility for benefits and to construe the terms of the plan;

- its view that "death or serious injury is a reasonably foreseeable consequence of driving a car with a blood alcohol level of .40% or .50% and therefore the Insured's death

was not an accident under the terms of the Policy" (citing *Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104 (7th Cir. 1998)); and

• "a reasonable person would have viewed the injury as highly likely to occur where the Insured was operating a motor vehicle with a blood alcohol content of .40% or .50%." (citing *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077 (1st Cir. 1990)).

### III.  LAW

#### A.  Standard of Review – Rule 56

Under Fed. R. Civ. P. 56, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In this instance, the material facts are not in dispute, but the interpretation of the record is disputed. The issue presented is whether the defendant has shown it is entitled to judgment as a matter of law.

#### B.  Standard of Review – ERISA

In evaluating questions of policy interpretation under ERISA, federal courts apply only federal common law. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989) ("*Bruch*"); *King II*, 414 F.3d at 998. When applying federal common law, binding precedent for all courts is set only by the Supreme Court. The district courts within a circuit are bound by the precedent set by the court of appeals for that circuit. Thus, on questions of federal

common law, this court is actually bound by the precedent of only the United States Supreme Court and the Eighth Circuit Court of Appeals.

"[A] denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Bruch*, 489 U.S. at 115. If an ERISA plan gives its administrator or trustees discretionary authority to determine eligibility for benefits, the court reviews such a decision for an abuse of discretion. *See id.*; *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998); *Buttram v. Cent. States, S.E. & S.W. Area Health & Welfare Fund,* 76 F.3d 896, 899 (8th Cir. 1996); *King II*, 414 F.3d at 998-99.

Under Eighth Circuit precedent, the deferential "abuse of discretion" standard of review applies ***unless*** the beneficiary comes forward with evidence establishing that the administrator acted under a conflict of interest, dishonestly, with an improper motive, or without using judgment. *Sehulka v. Lucent Tech., Inc.*, 206 F.3d 763, 768 (8th Cir. 2000). To obtain a less deferential review, the plaintiff "must present material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to [plaintiff]." *Woo*, 144 F.3d at 1160. If the record reveals evidence of "a palpable conflict of interest or a serious procedural irregularity," courts within the Eighth Circuit must review the plan administrator's discretionary decisions with less deference. *See Woo*, 144 F.3d at 1161.

In this case, it is undisputed that Zurich was granted discretionary authority to determine eligibility for benefits and to construe the terms of the plan. The plaintiff has not presented any evidence of a palpable conflict of interest or a serious procedural irregularity. Accordingly, the court must review Zurich's decision to deny accidental death benefits for abuse of discretion.

### C.   Review for Abuse of Discretion

"The administrator's interpretation of uncertain terms in a plan 'will not be disturbed if reasonable.'" *King II*, 414 F.3d at 999 (quoting *Bruch,* 489 U.S. at 111); *see also Buttram v. Cent. States, S.E. & S.W. Area Health & Welfare Fund*, 76 F.3d at 901.

To determine whether the administrator's interpretation was reasonable, courts within the Eighth Circuit consider the *Finley* factors: "'whether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language of the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan.'" *King II*, 414 F.3d at 999 (quoting *Finley v. Special Agents Mut. Benefit Assoc., Inc.*, 957 F.2d 617, 621 (8th Cir. 1992)).

In reviewing the record for abuse of discretion, the court must also ensure that an administrator's decision is supported by substantial evidence, i.e., such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Id.* "In sum, an

administrator with discretion under a benefit plan must articulate its reasons for denying benefits when it notifies the participant or beneficiary of an adverse decision, and the decision must be supported by both a reasonable interpretation of the plan and substantial evidence in the materials considered by the administrator." *Id*.

The specific matters at issue in this case are:

• The reasonableness of the plan administrator's interpretation of the policy exclusion for losses "caused by, contributed to, or resulted from * * * Suicide, attempted suicide, or a purposeful self-inflicted wound,"

• The reasonableness of the plan administrator's interpretation or construction of the term "accident," and

• Whether the administrator's decision was supported by substantial evidence.

### 1. Construction of the Policy Exclusion

The policy at issue in *King II* contained a policy exclusion for losses caused by an "intentionally self-inflicted injury, suicide, or suicide attempt, whether sane or insane." 414 F.3d at 997. In *King II*, the Eighth Circuit specifically rejected the insurer's argument that the decedent's alcohol intoxication was itself an "intentionally self-inflicted injury" that "contributed to" his injuries and death. 414 F.3d at 1004. The court found, *inter alia*, that the insurer's interpretation of the plan was unreasonable because it was based on an unreasonable interpretation of the plan:

> The most natural reading of the exclusion for injuries contributed to by "intentionally self-inflicted injury, suicide, or attempted suicide" does not include injuries that were unintended by the participant, but which were contributed to by alcohol intoxication. The Seventh Circuit seemed to think this self-evident when it explained in a case involving death by drunk driving that the plan at issue "does not specifically exclude from coverage the conduct at issue *but does exclude other conduct*–notably suicide, attempted suicide and *purposefully self-inflicted injury.*" *Cozzie,* 140 F.3d at 1111 (emphases added). One rarely thinks of a drunk driver who arrives home safely as an "injured" party, and to define drinking to the point of intoxication as an "intentionally self-inflicted injury, suicide, or attempted suicide" is at least a "startling construction." [*Brumm v. Bert Bell NFL Retirement Plan*, 995 F.2d 1433, 1440 (8th Cir. 1993)].

*King II*, 414 F.3d at 1004.

The policy exclusion in this case contemplates death caused by "suicide, attempted suicide, or a purposeful self-inflicted *wound*." (Emphasis added). Equating the act of voluntary intoxication to the self-infliction of a "wound" is contrary to the clear language of the exclusion.

The court finds that, as in *King II*, the most natural reading of this exclusion does not include injuries that were unintended by the participant, but which were contributed to by alcohol intoxication.[1]

---

[1] Zurich has never actually taken the position that Gloria Courtney committed suicide or attempted to commit suicide.

-10-

## 2. Construction of the Term "Accident"

The Policy does not define the term "accidental." In its final denial letter, Zurich apparently abandoned its position that Gloria's intoxication constituted some kind of self-inflicted "wound." It did reiterate its assertion (based on the Seventh Circuit's opinion in *Cozzie*) that the death was not accidental because death or serious injury is a reasonably foreseeable consequence of driving a car with a blood alcohol level of .40% or .50%. In the alternative, and for the first time, Zurich asserted that the death was not accidental under the *Wickman* standard because "a reasonable person would have viewed the injury as highly likely to occur where the Insured was operating a motor vehicle with a blood alcohol content of .40% or .50%."

> The *Cozzie* and *Wickman* standards are not the same.
>
> The highly-likely [*Wickman*] standard not only creates a far more inclusive definition of "accident," but also requires more care and consideration in assessing likelihoods. The reasonably-foreseeable [*Cozzie*] standard, by contrast, not only could define away most accidents resulting from the victim's imprudence or negligence, but also provides an easy way for an insurance company to deny just claims relating to accidents.

*King II*, 414 F.3d at 1007 n.6 (Bright, J., concurring). Judge Bright's concurring opinion observes that the federal common law definition of "accident" is the definition developed in *Wickman* and subsequent cases. *Id.* He argued, very persuasively, against applying a "reasonably-foreseeable" standard in cases such as this:

> As the *Wickman* court noted, people buy accident insurance to protect themselves against their own negligence–that is, voluntary but imprudent

-11-

> conduct that may with reasonable foreseeability result in injuries or even death. *See* 908 F.2d at 1088.
>
> By excluding from accident coverage any injury that was reasonably foreseeable, the plan administrator's decision would seem to make nonsense of the concept of an "accident." It would seem to reduce "accident insurance" to insurance only for strange, unforeseeable injuries (e.g., choking to death on a piece of meat) or for injuries in which the victim was passive rather than active (being struck by lightning or being run down by a reckless driver while crossing the street). Such a construction of the terms of an insurance plan would turn the insurance policy into a trap for the unwary. It would deceive employees–attracting them to a job with the promise of benefits that turn out, when they are claimed, to be illusory. Such interpretations of plan language by a plan administrator constitute an abuse of discretion–under the third *Finley* factor, namely, that a decision may not violate the substantive or procedural requirements of ERISA (by, for instance, misleading plan participants). *See Lutheran Med. Ctr. v. Contractors Health Plan*, 25 F.3d 616, 621 (8th Cir. 1994); *Brumm v. Bert Bell NFL Ret. Plan*, 995 F.2d 1433, 1439-40 (8th Cir. 1993). Such a definition also runs afoul of the first *Finley* factor: It is not consistent with the goals of an accident insurance plan to deny coverage for all accidents other than those in which the victim was passive or which did result from the victim's own actions but were so bizarre as to be unforeseeable.

414 F.3d at 1008-1009 (Bright, J., concurring). In *King II*, the dispute was remanded to the plan administrator for reevaluation of the claim for accidental benefits under the *Wickman* standard, which was the standard the insurer argued should be applied.

The court has carefully reviewed the decisions in *Cozzie*, *King II*, *Finley*, *Wickman*, and *City of Carter Lake v. Aetna Cas. & Sur. Co.*, 604 F.2d 1052 (8th Cir. 1979) (cited with approval in *Wickman*), and finds that the federal common law definition of "accident" is that applied in *Wickman*: "An injury that the victim reasonably expected to escape or (where the victim's subjective expectations cannot be determined) an injury that a reasonable person

with background and characteristics similar to those of the victim would not have considered highly likely.'" *King II*, 414 F.3d 1008 n.6 (Bright, J., concurring) (citing *Wickman*, 908 F.2d at 1088-89). Furthermore, Zurich has itself invoked the *Wickman* definition.

### 3. Whether the Administrator's Decision Was Supported by Substantial Evidence

Applying the *Wickman* analysis to the record at hand, the court finds that the administrator's decision to deny benefits is not supported by substantial evidence. Zurich cited conflicting standards of review, and it appears that Zurich denied coverage solely on the basis of the decedent's admittedly high blood alcohol content. Although Zurich's December 21, 2005 communication impliedly concedes that the *Wickman* standard should be applied in this matter, the denial letter does not reflect that the plan administrator considered the background and characteristics of the decedent, or whether a reasonable person *with background and characteristics similar to those of Gloria Courtney* would have considered death to be a highly likely consequence of her actions.

It is uncontroverted that Gloria Courtney was a heavy drinker. Taking that factor into consideration, Zurich's own expert concluded that "in someone who drinks regularly as this patient did, she would potentially still be awake and breathing although it is likely she would be intoxicated." The expert further opined that the .5% blood alcohol level by itself would not likely be lethal as to Gloria Courtney. The police reports in the administrative record indicate that Gloria was in a good mood prior to the accident. "They had been to get their taxes done at 0930 hours and returned at approximately 1030 hours. Phillip had gone to

-13-

sleep when they returned home. Phillip advised [Gloria] Courtney did drink a lot, but had not been drinking when he last saw her." The collision occurred shortly before midnight. Gloria was not wearing a seat belt and died of multiple blunt force injuries. There is no statistical evidence in the record as to the likelihood of death in correlation to blood alcohol levels or driving while intoxicated.[2]

The evidence of record does not support the conclusion that a reasonable person with background and characteristics similar to those of Gloria Courtney would have viewed her injuries and death as highly likely to occur as a result of her conduct.

This conclusion is not intended to excuse or expunge the sad consequences of drunken driving, binge drinking or alcoholism. Unfortunately, people commonly drive while under the influence of alcohol. Many people do not use seat belts. These are facts well known to insurance companies.[3] Simply, as Judge Bright explained in his concurring opinion in *King II*, people buy accident insurance to protect themselves against their own negligence. In this particular instance, and considering the evidence of record regarding the background and characteristics of the decedent, it was not reasonable for the plan

---

[2] The statistical evidence considered by the courts in the *King II* litigation showed that drunk driving deaths constitute less than one percent of the number of people arrested for drunk driving. 414 F.3d at 998.

[3] The policy issued by Zurich in this matter contains an enhanced "seat belt" benefit for accidental death resulting from an automobile accident; however, the enhanced benefit is not available if the driver of the vehicle was under the influence of alcohol or non-prescribed controlled substances.

-14-

administrator to deny coverage solely on the basis of Gloria Courtney's blood alcohol level at the time of her death.

## ORDER

The court finds that the defendant is not entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 56(c).  Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment [27] is denied.

2. Counsel shall contact chambers no later than January 30, 2008 to schedule a planning conference with the undersigned.

**DATED January 22, 2008.**

> BY THE COURT:
>
> **s/ F.A. Gossett**
> **United States Magistrate Judge**